UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| LESTER ALLEN BARNES, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| v. | ) | No.: 3:16-CV-443-TAV-HBG |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Petitioner Lester Allen Barnes has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 1]. At the Court's direction, the government filed a response [Doc. 16], and petitioner filed a late reply [Doc. 17]. Having considered the pleadings and the record, along with the relevant law, the Court finds that it is unnecessary to hold an evidentiary hearing,[1] and petitioner's § 2255 motion will be denied.

**I.  Background**

On October 29, 2014, a jury found petitioner guilty of all counts against him in the indictment, including: three counts of distribution of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); one count of possession of oxycodone with intent to distribute, also in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); one count of possession of a

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of possession of a firearm or ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) [Doc. 45, 3:13-CR-117].[2] Evidence at trial included testimony by law enforcement and a confidential informant, which established that petitioner sold oxycodone pills on several occasions and often had firearms with him during the sales [Doc. 64 pp. 30, 34, 37, 39, 68–69, 79]. The defense also called four witnesses, which included petitioner's friends and family [*see* Doc. 65 pp. 62–96]. This Court ultimately sentenced petitioner to a within-guidelines term of imprisonment of 106 months, consisting of 46 months on the felon-in-possession and drug offenses and a consecutive 60 months for the § 924(c) offense [Docs. 49 p. 16; 59]. The Sixth Circuit Court of Appeals affirmed petitioner's conviction and sentence, 822 F.3d 914, and petitioner timely filed his § 2255 motion on July 13, 2016.

## II. Legal Standard

The Court must vacate, set aside, or correct petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. To obtain relief under § 2255 because of constitutional error, the error must be one of "constitutional magnitude which

---

[2] All documents cited in this section refer to the docket in Case Number 3:13-CR-117 unless otherwise stated.

had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

A § 2255 petitioner has the burden of proving that he or she is entitled to relief under § 2255 by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), and must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982). Further, a petitioner may not relitigate claims that were raised and considered on direct appeal absent an intervening change in the law, or other such extraordinary circumstance. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

### III.  Analysis

Petitioner first argues that the Presentence Investigation Report ("PSR") improperly enhanced his base offense level and criminal history score based on his 1998 state drug conviction, adversely affecting his guideline imprisonment range for the drug and felon-in-possession charges [Doc. 2 pp. 3–5, 8–13]. Petitioner also alleges that his trial counsel was ineffective for (1) allegedly forging his signatures on two stipulations used at trial; (2) failing to use the findings of the Administrative Law Judge from his state forfeiture case; (3) mistakenly asking the jury to find him guilty in his closing argument; and (4) failing to use his medical records for impeachment of witnesses at trial or mitigation at sentencing [*Id.* pp. 17–20]. The Court will address each argument in turn.

### A. Petitioner's Challenge to his Guideline Range

Because the United States Sentencing Guidelines are advisory, a petitioner's claim that the Court erred in calculating his guideline range does not allege that his sentence is unconstitutional or that the Court lacked jurisdiction to impose his sentence. *See Gibbs v. United States*, 655 F.3d 473, 479 (6th Cir. 2011); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Accordingly, such a claim is ordinarily not cognizable on collateral review under § 2255. *See Grant*, 72 F.3d at 506. Petitioner did raise this same claim on direct appeal, where the Sixth Circuit held this Court did not err in sentencing petitioner according to the PSR's guideline calculation. *United States v. Barnes*, 822 F.3d 914, 924–26 (6th Cir. 2016). But the Sixth Circuit has also held that claims raised on direct appeal may not be relitigated on collateral review absent "highly exceptional circumstances," such as an intervening change in the law. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Petitioner has not alleged any exceptional circumstances that would warrant revisiting this issue. For both reasons, petitioner's challenge to his sentencing guidelines calculation is not cognizable, and petitioner is not entitled to relief on this basis.

### B. Petitioner's Ineffective Assistance Claims

Claims of ineffective assistance of counsel, on the other hand, are cognizable under § 2255. *Massaro v. United States*, 538 U.S. 500, 508–09 (2003). The Sixth Amendment guarantees criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner alleging ineffective assistance of counsel must first establish that his counsel's performance was deficient, that

4

is, falling "below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy") (internal citation omitted).

A petitioner must also show that his attorney's deficient performance prejudiced his defense, in the sense that "but for [counsel's error,] the result of the proceedings would have been different." 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If petitioner fails to establish both deficiency and prejudice, the claim must be rejected. *Id.* at 697.

1.  **Counsel's Use of Stipulations**

The government introduced three stipulations at trial, all without objection from petitioner [Doc. 65 p. 46, 3:13-CR-117]. In the first, marked Exhibit 42, petitioner and the government stipulated to petitioner's prior felony conviction for purposes of the felon-in-possession charge [*Id.* pp. 46–47]. In Exhibit 43, the parties stipulated that the firearms and ammunition involved in the case were manufactured outside the state of Tennessee, traveled in interstate commerce, and therefore affected interstate commerce [*Id.* p. 47–49]. Finally, the parties stipulated in Exhibit 44 to the chain of custody and identification of the

various tablets involved in the controlled purchases discussed at trial [*Id.* pp. 49–54]. The Court has reviewed each of these exhibits and can confirm that each bears a signature above petitioner's name, dated October 23, 2014. However, petitioner asserts that he only signed Exhibit 43 and "refused adamantly" to sign the others [Doc. 2 p. 17]. Accordingly, petitioner "believes his attorney signed [Exhibits 42 and 44] without [his] consent." [*Id.*]. Petitioner avers that, had these stipulations not been used, the jury might not have found him guilty because they could have considered other alternatives, particularly that Joe Barnes could have sold the tablets to the confidential informant instead of him [*Id.* pp. 17–18].

Petitioner's mere "belief" that his attorney forged his signatures on two stipulations, in the face of contrary evidence in the record, does not meet his burden of proving his entitlement to relief by a preponderance of the evidence. *See Pough*, 442 F.3d at 964. As the government points out in its response, each stipulation bears a signature on petitioner's signature line and, for what it is worth, the signatures on Exhibits 42 and 44 appear similar to the signature on Exhibit 43, which petitioner acknowledges having signed. Furthermore, counsel for the government read the stipulations aloud at trial and defendant did not object to their admission, nor is there any evidence in the record that defendant disputed signing the stipulations at that time [*see* Doc. 65 pp. 46–54, 3:13-CR-117].

Finally, putting aside the unsupported allegation that counsel forged petitioner's signatures on the stipulations, the Sixth Circuit has recognized that "factual stipulations to elements of a crime are often the product of a sound trial strategy." *United States v.*

6

*Monghan*, 409 Fed. App'x 872, 877 (6th Cir. 2011) ("For example, where a prior felony conviction is an element of the offense, a sound strategy may be to stipulate to the existence of the conviction rather than allow the jury to hear details about the earlier crime."). Although petitioner references the possibility that Joe Barnes was the one who sold the drugs to the confidential informant, he does not explain how stipulating to the facts of his prior conviction and the substances identified in the tablets prevented the jury from considering that scenario. And, in any event, the confidential informant testified at trial that she purchased the pills in question from petitioner, and not from Joe Barnes [*see* Doc. 64 pp. 73, 75, 3:13-CR-117]. Thus, petitioner cannot overcome the presumption that the stipulations were part of a sound trial strategy, and therefore cannot establish that counsel's performance was deficient. *See Strickland*, 466 U.S. at 689.

### 2. Counsel's Failure to Use Findings of Administrative Law Judge from State Forfeiture Proceedings

Petitioner faults his counsel for failing to introduce at trial the findings of the Administrative Law Judge ("ALJ") from his state forfeiture proceedings [Doc. 2 pp. 18–19]. The ALJ had found that there was insufficient evidence to support the allegation that a crossbow and Lowe's gift cards belonging to petitioner were the proceeds of an illegal drug transaction [*Id.* p. 19]. Petitioner argues that, had it been introduced at trial, this information would have contradicted the confidential informant's testimony that he received Lowe's gift cards in exchange for drugs. However, petitioner fails to acknowledge the efforts that his counsel did undertake to impeach the confidential informant at trial [*see* Doc. 64 pp. 86–100, 3:13-CR-117]. Petitioner's counsel focused in

7

particular on the informant's extensive criminal record, her resulting motive to become an informant, and the fact that she also purchased drugs from Joseph Barnes [*Id.*].

These decisions, too, are all part of counsel's trial strategy and tactics, to which this Court is required to give significant deference. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."); *Bentley v. Motley*, 248 Fed App'x 713, 718 (6th Cir. 2007) (finding counsel was not ineffective for asking only one question on cross-examination of a witness where petitioner failed to establish that the strategy was "objectively unreasonable, or outside the realm of reasonable professional judgments). Petitioner has provided nothing more than bare speculation in asserting that "a different verdict would have been given" had counsel used his proposed evidence [Doc. 2 p. 19]. In doing so, petitioner fails to establish that his counsel's performance fell "below an objective standard of reasonableness," as is required under *Strickland's* first prong. 466 U.S. at 688. Petitioner has not shown counsel was deficient.

### 3. Counsel's Misstatement in Closing Arguments

Petitioner next alleges that his attorney was ineffective when counsel inadvertently asked the jury to find him guilty on all charges at the end of his closing statement [Doc. 2 pp. 19–20; *see* Doc. 65 p. 119, 3:13-CR-117]. Petitioner argues that this misstatement "would leave an impression upon the minds of the jury that [petitioner's] own attorney believes him to be guilty," which, he alleges, "influenced the jury greatly and calls for a new trial" [Doc. 2 pp. 19–20].

It is true that petitioner's trial counsel asked the jury to "find [petitioner] guilty of all the charges against him" [Doc. 65 p. 119, 3:13-CR-117]. However, upon hearing this, the Court clarified counsel's statement by saying "I think you meant to say find him not guilty" [*Id.* pp. 119–120]. Counsel responded, "Not guilty, yes, sir. That's what I thought I said," making it clear that his first statement was inadvertent [*Id.* p. 120].

Several courts have held that this precise "slip of the tongue" on the part of a defense attorney does not amount to ineffective assistance of counsel. *See United States v. Boedigheimer*, 295 F. Supp. 3d 912, 922 (D. Minn. 2018) (holding counsel's misstatement was not ineffective assistance where context of entire closing argument indicated counsel "misspoke by unintentionally leaving out the word 'not' when he asked for a guilty verdict."); *Robertson v. United States*, Nos. 8:08-cr-240-T-17-TBM, 8:14-cv-1979-T-17-TBM, 2014 WL 12603511, at *4 (M.D. Fla. Nov. 25, 2014) ("[A] careful review of the entirety of the closing statement reveals that Robertson's counsel provided a clear presentation emphasizing that he believed his client was not guilty and that he was advocating for a verdict of 'not guilty.'"); *Irick v. United States*, Nos. 3:09-cv-90047CAR, 3:06-cr-32CAR, 2010 WL 4260515, at *9 (M.D. Ga. May 12, 2010) (holding counsel's "obvious slip of the tongue" was not ineffective assistance where counsel had immediately corrected himself and in light of the court's instruction that "anything the lawyers say is not evidence"). The Court is compelled to reach the same conclusion here. Petitioner's trial counsel spent his closing argument undermining the credibility of the government's witnesses, the thoroughness of its investigation, and the strength of its case, all of which

9

emphasized that he was advocating for a "not guilty" verdict [*see* Doc. 65 pp. 111–119, 3:13-CR-117]. When alerted to his misstatement by the Court, counsel immediately corrected himself [*Id.* pp. 119–120]. And, after closing arguments were completed, the Court reminded the jury that "[t]he lawyers' statements and arguments are not evidence" [*Id.* p. 126]. Counsel's mistake does not amount to ineffective assistance.

### 4. Counsel's Failure to Use Petitioner's Medical Records

Finally, petitioner summarily argues that he "would have received a different sentence" had his counsel used petitioner's medical records to impeach the government's confidential informant at trial and to advocate for a lower sentence [Doc. 2 p. 20]. However, counsel did elicit testimonial evidence at trial regarding petitioner's health issues to explain why petitioner was prescribed pain medication [*see* Doc. 65 pp. 96–97, 3:13-CR-117], and the PSR outlined the same for the Court at sentencing [*see* Doc. 49 pp. 14–15, 3:13-CR-117]. Counsel also *did* advocate for a downward sentencing variance based on petitioner's health problems [*see* Doc. 57 pp. 4–7, 3:13-CR-117]. Whether and how to present proof of petitioner's ailments and how best to impeach a witness are, again, matters of trial strategy that the Court "should avoid second-guessing." *See Bentley*, 248 Fed. App'x at 718 (citing *Strickland*, 466 U.S. at 689). Particularly in light of the fact that counsel did present evidence of petitioner's medical issues at trial and sentencing, petitioner cannot overcome the presumption that counsel's strategy was sound merely because petitioner disagrees with the form in which the evidence was presented. *See Strickland*, 466 U.S. at 689. Thus, petitioner has not shown that counsel was deficient.

10

## IV. Conclusion

Petitioner has failed to establish any basis upon which § 2255 relief could be granted, and his motion to vacate, set aside, or correct sentence [Doc. 1] will be **DENIED**. This action will be **DISMISSED**, and the Court will **CERTIFY** that any appeal from this action would not be taken in faith and would be totally frivolous. Moreover, petitioner has not made a substantial showing of the denial of a constitutional right because jurists of reason would not dispute the above conclusions, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), so a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Fed. R. App. P. 22(b). A judgment will enter **DENYING** the Motion [Doc. 1].

ORDER ACCORDINGLY:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE